```
         IN THE UNITED STATES DISTRICT COURT
       FOR THE EASTERN DISTRICT OF PENNSYLVANIA


TEMI BAMGBOSE, Individually    :    CIVIL ACTION
and on Behalf of All Others    :
Similarly Situated             :
                               :
          v.                   :
                               :
DELTA-T GROUP, INC., et al.    :    NO. 09-667
```

MEMORANDUM

McLaughlin, J.                                       July 6, 2009

        The plaintiff seeks to prosecute a nationwide collective action under the Fair Labor Standards Act ("FLSA"). He argues, on behalf of himself and others similarly situated, that the defendants willfully and maliciously classified him and other healthcare workers as independent contractors in order to evade FLSA overtime compensation requirements. He also plans to bring a class action under the Employee Retirement Income Security Act ("ERISA") on the basis that the misclassified individuals have been denied certain employee benefits to which they otherwise would have been entitled, but for the misclassification.

        The defendants have moved to dismiss the plaintiff's ERISA claims pursuant to Federal Rules 12(b)(6), 12(b)(7), and 19(a). They argue that the ERISA claims should be dismissed in their entirety for failure to comply with the statute of limitations. They also argue that the plaintiff's breach of fiduciary duty claim should be dismissed for failure to state a

claim, and that the plaintiff's denial of benefits claim should be dismissed for failure to join all necessary parties. The Court agrees that the named plaintiff's ERISA claims were not brought within the applicable statute of limitations periods. Those claims will therefore be dismissed.

I.  Background[1]

Delta-T is a Pennsylvania corporation that recruits, hires, places, schedules, and supervises healthcare workers who provide temporary services to client facilities. Although the workers are assigned to client facilities, they maintain a continuous and ongoing relationship with Delta-T. Am. Compl. ¶¶ 7-8, 20.

On November 30, 1999, the plaintiff entered into an independent contractor broker agreement ("ICBA") with Delta-T. The ICBA states that the plaintiff is a "self-employed independent contractor, . . . with Delta-T having no control, direction, or influence whatsoever over" his actions in

---

[1] On a motion to dismiss, courts can consider the allegations of the complaint, exhibits attached to the complaint, matters of public record, and any undisputedly authentic document that a defendant attaches to a motion to dismiss if the plaintiff's claims are based on the document. Lum v. Bank of Am., 361 F.3d 217, 222 n.3 (3d Cir. 2004); Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993). The Court will accept the allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. See Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009).

performing duties for clients. The ICBA also states that because the plaintiff "is engaged in [his] own independently established business, . . . [he] is not eligible for, and shall not participate in, any employee pension, health, or other fringe benefit plans of Delta-T . . . ." Defs.' Mot. Ex. A.

The plaintiff alleges that the defendants administer and sponsor employee retirement and welfare plans. These plans offer benefits that include health insurance, 401(k) matching contributions, long-term disability insurance, group term life insurance, vacation compensation, and tuition reimbursements. According to the plaintiff, the defendants deny certain healthcare workers access to these benefits by misclassifying them as independent contractors. Am. Compl. ¶¶ 23-25.

In addition to being denied employee benefits, the plaintiff alleges that being misclassified as independent contractors further affects healthcare workers by preventing them from receiving overtime payment. The plaintiff claims that he and others similarly situated regularly and customarily work in excess of forty hours per week for the defendants and their clients. These individuals, the plaintiff alleges, are compensated at a flat hourly rate, with no additional compensation for overtime hours worked. Id. ¶¶ 28-30.

3

II.  Discussion

The plaintiff argues that the defendants' misclassification of healthcare workers as independent contractors violates ERISA in two respects.  First, he argues that he and others similarly situated have been improperly denied employee and plan benefits.  Second, he argues that the defendants' conduct amounts to a breach of fiduciary duty.  The defendants move to dismiss the plaintiff's ERISA claims on three grounds:  (1) that the claims should be dismissed in their entirety because they were brought outside the applicable statute of limitations periods; (2) that the plaintiff's breach of fiduciary duty claim should be dismissed for failure to state a claim; and (3) that the plaintiff's denial of benefits claim should be dismissed for failure to join all necessary parties.  Because the claims were not brought within the applicable limitations periods, the Court will grant the defendants' motion.[2]

---

[2] At oral argument, counsel for the plaintiff stated that other potential plaintiffs' claims would not fail under the same statute of limitations arguments, and that the plaintiff intends to amend his complaint as necessary to add named plaintiffs whose ERISA claims would not fail to meet the statute of limitations. For this reason, although the Court finds the defendants' statute of limitations arguments sufficient to dismiss the named plaintiff's ERISA claims, it will also address the defendants' other arguments regarding the ERISA claims.

A.   Statute of Limitations

The defendants argue that the plaintiff's ERISA claims are untimely under the relevant statute of limitations periods. The Court agrees.

1.   Denial of Benefits Claim

ERISA does not contain a statute of limitations period for non-fiduciary claims.  For such claims, the applicable statute of limitations is that of the forum state claim most analogous to the ERISA claim at hand.  Miller v. Fortis Benefits Ins. Co., 475 F.3d 516, 520 n.2 (3d Cir. 2007); Gluck v. Unisys Corp., 960 F.2d 1168, 1179 (3d Cir. 1992).  A claim for denial of benefits under ERISA § 502(a)(1)(B) is most analogous to a breach of contract claim under Pennsylvania law.  See Hill v. Conn. Gen. Life Ins. Co., No. 07-1706, 2008 WL 4200161, at *2-3 (W.D. Pa. Sept. 8, 2008); Keen v. Lockheed Martin Corp., 486 F. Supp. 2d 481, 486 (E.D. Pa. 2007); see also Syed v. Hercules, Inc., 214 F.3d 155, 159 (3d Cir. 2000) ("Although this Circuit has not decided which state statute of limitations is applicable to ERISA § 502(a)(1)(B), every other circuit to address the issue has applied the statute of limitations for a state contract action." (footnote omitted)).  The statute of limitations for Pennsylvania contract actions is four years.  42 Pa. Cons. Stat. § 5525(a).

At oral argument, defense counsel stated that she had found cases from the Third Circuit suggesting that the correct statute of limitations for the plaintiff's denial of benefits claim might be three years.³  The Court assumes that counsel was referring to those cases discussing the similarities between claims under ERISA and claims under the Pennsylvania Wage Payment and Collection Law ("WPCL"), which provides a three-year statute of limitations.  See Gluck, 960 F.2d at 1181; Henglein v. Colt Indus. Operating Corp., 260 F.3d 201, 208-09 (3d Cir. 2001).  These courts did not decide, however, that a WPCL claim is the forum state claim most analogous to a § 502(a)(1)(B) claim for benefits.  See Syed, 214 F.3d at 159; Miller v. Aetna Healthcare, No. 01-2443, 2001 WL 160981, at *2 (E.D. Pa. Dec. 12, 2001).

The WPCL allows an employee to collect wages that an employer owes him contractually.  See generally 43 Pa. Cons. Stat. §§ 260.1-301.  The WPCL does not create a right to compensation, but rather, merely provides employees a statutory remedy to recover wages that are already due to them as a matter of contract.  De Asencio v. Tyson Foods, Inc., 342 F.3d 301, 309 (3d Cir. 2003); Oberneder v. Link Computer Corp., 696 A.2d 148, 150 (Pa. 1997).

The heart of the plaintiff's claim in this case is not that independent contractors were or should have been entitled to

---

³ Counsel did not provide case citations to the Court.

benefits based on the contract they signed, but rather, that individuals who were made to sign ICBAs instead should have been allowed to sign employment agreements.  The alleged wrongdoing is the defendants' categorical decision to misclassify workers as independent contractors so as to deny them benefits in the first instance.  This is not a claim for benefits that were contractually due, but rather, a claim based on an inherent defect in the contracts signed by the plaintiff and those similarly situated.

  The Court concludes that the plaintiff's denial of benefits claim is more analogous to a contract claim than to a claim under the WPCL.[4]  Accordingly, it will apply Pennsylvania's four-year statute of limitations for contract actions.  The plaintiff filed suit on February 17, 2009.  This claim is therefore timely if it accrued on or after February 17, 2005.

  The accrual date for federal claims is governed by federal law, irrespective of the source of the limitations period.  When there is no controlling federal statute, federal law uses a "discovery rule" to determine the accrual date of a

---

[4] In addition, district courts in this circuit applying Pennsylvania law to § 502(a)(1)(B) denial of benefits claims have uniformly concluded that the four-year statute of limitations for contract actions applies, including courts addressing denial of benefits claims similar to the present one. See, e.g., Keen, 486 F. Supp. 2d at 486; Thomas v. Smithkline Beecham Corp., 297 F. Supp. 2d 773, 783 (E.D. Pa. 2003).  The Court has not found any cases utilizing the WPCL's three-year limitations period for § 502(a)(1)(B) claims for benefits.

federal claim.  Under this rule, the statute of limitations begins to run when a plaintiff discovers or should have discovered the injury that forms the basis of the claim.  Miller, 475 F.3d at 520 (citing Romero v. Allstate Corp., 404 F.3d 212, 221-22 (3d Cir. 2005)).

In the denial of benefits context, the discovery rule has developed into a more specific "clear repudiation" rule, whereby a non-fiduciary cause of action accrues when a claim for benefits has been denied.  The rule does not require a formal denial of a claim for benefits, as long as there has already been a repudiation of the benefits by the fiduciary which was "clear and made known" to the beneficiary.  Id. at 521.  In other words, some event other than a denial of a claim may trigger the statute of limitations by clearly alerting the plaintiff that his entitlement to benefits has been repudiated.  See id. at 520-23 (concluding that a plaintiff who had been underpaid for fifteen years before he discovered the error was sufficiently made aware that he was underpaid and that his right to a greater award had been repudiated when he received the first check for the lower amount); Keen, 486 F. Supp. 2d at 489 (dismissing as untimely the claim of a plaintiff who "understood from the start of his tenure at defendants' facilities that he would not be eligible to participate in defendants' benefit plans as a contingent worker").

Here, the ICBA expressly stated that the plaintiff, as an independent contractor, was not entitled to participate in any employee pension, health, or other fringe benefit plan. Even without having access to plan documents defining eligibility requirements, the plaintiff now alleges "upon information and belief" that "acknowledged employees" were receiving retirement and welfare benefits. Am. Compl. ¶ 23. The plaintiff has not provided a reason why such an allegation could not have been made at an earlier time. He does not allege, for example, that the scope of his employment has somehow changed, such that he now believes he should be classified as an employee, whereas he did not believe or could not reasonably have believed so at an earlier time. Nor does he allege that he did not understand, at the start, that he would not be eligible to participate in the defendants' benefit plans as an independent contractor. The ICBA, which was signed in 1999, was a clear repudiation of benefits. The plaintiff's claim is untimely and will therefore be dismissed.[5]

---

[5] The plaintiff argues that, without having seen plan documents, he cannot be said to have been made "aware" within the meaning of the clear repudiation rule. He would thus require discovery in the first instance to find out which, if any, benefits should have been made available to him. As support, the plaintiff cites a case from this district, Thomas v. Smithkline Beecham Corp., 297 F. Supp. 2d 773, 783 (E.D. Pa. 2003). In Thomas, the plaintiffs were fired and then rehired as "regular employees," at which time they received plan documents. The plaintiffs had not previously been told that they were not considered common-law employees and therefore were not eligible

2.  <u>Breach of Fiduciary Duty Claim</u>

Under 29 U.S.C. § 1113, ERISA breach of fiduciary duty claims must be brought within the earlier of (1) six years after (A) the date of the last action which constituted a part of the breach or violation, or (B) in the case of an omission the latest date on which the fiduciary could have cured the breach or violation, or (2) three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation; except that in the case of fraud or concealment, such action may be commenced no later than six years after the date of discovery of such breach or violation.  As the Court of Appeals has summarized, "[t]his section thus creates a general six year

---

to participate in the defendant's employee benefits plan.  The company rejected the plaintiffs' claims for benefits for the earlier periods of employment and explained that the earlier periods of employment would be treated as "leased" employment.  The court concluded that the date of accrual for the plaintiffs' denial of benefits claim was not the original date of hire, but rather, the date of rehire, because that was when the plaintiffs first discovered that they were not previously treated as "regular employees" who were entitled to benefits under the plan documents.  <u>Id.</u> at 787.
    The Court does not read <u>Thomas</u> - or <u>Miller</u> - as requiring a plaintiff to have read plan documents before a clear repudiation can occur.  <u>See</u> <u>Keen</u>, 486 F. Supp. 2d at 488.  The plaintiffs in <u>Thomas</u> did not learn that they were not going to be treated as regular employees who were entitled to benefits until they had read plan documents.  In contrast, the plaintiff here was specifically told at the outset of his relationship with the defendant that he would not participate in any Delta-T employee benefits plan because of his status as an independent contractor.  He also alleges, upon information and belief, that other "acknowledged employees" were receiving benefits.  As the Court has explained, there is no reason that the plaintiff could not have made such an allegation at an earlier time.

10

statute of limitations, shortened to three years in cases where the plaintiff has actual knowledge of the breach, and potentially extended to six years from the date of discovery in cases involving fraud or concealment."  Ranke v. Sanofi-Synthelabo Inc., 436 F.3d 197, 201 (3d Cir. 2006) (quoting Kurz v. Phila. Elec. Co., 96 F.3d 1544, 1551 (3d Cir. 1996)).[6]

The parties disagree about the proper limitations period to apply and about the date that the cause of action accrued.  The defendants argue that the three-year statute of limitations applies because the plaintiff had "actual knowledge" of the breach - namely, his knowledge that he was classified as an independent contractor.  The defendants further argue that even given a six-year statute of limitations, the plaintiff's claim is untimely because the "date of last action" which constituted a part of the breach is the date that the plaintiff signed the ICBA.  In other words, the breaching conduct here is the misclassification of the plaintiff as an independent contractor.  That classification occurred on the date that the plaintiff signed the ICBA in November 1999.[7]

---

[6] The plaintiff has not alleged fraud or concealment.

[7] The Court of Appeals for the Third Circuit has declined to adopt a "continuing violation" theory for ERISA denial of benefits claims, by which a new cause of action would accrue upon each underpayment or denial of benefits owed.  Miller, 475 F.3d at 522.  Because the relevant action in this case is the defendants' alleged misclassification of the plaintiff, the date of last action would be the date on which that misclassification

11

The first issue that the Court must decide is whether to apply a three-year or a six-year statute of limitations to the plaintiff's fiduciary claim. This question turns on whether the plaintiff can be charged with "actual knowledge" of the breach or violation. The United States Court of Appeals for the Third Circuit interprets the actual knowledge requirement stringently. Montrose, 243 F.3d at 787; see also Gluck, 960 F.2d at 1176 ("Section 1113 sets a high standard for barring claims against fiduciaries prior to the expiration of the section's six-year limitations period.").

In the Third Circuit, a plaintiff has actual knowledge of a breach or violation when she has actual knowledge of all material facts necessary to understand that some claim exists. Montrose, 243 F.3d at 787. The plaintiff must also be aware that an actual claim exists under ERISA. Id. This does not mean that the three-year limitations period cannot begin to run until the plaintiff meets with a lawyer or otherwise develops a comprehensive understanding of her rights under ERISA. See id. (quoting Gluck, 960 F.2d at 1177). It does mean, however, that constructive knowledge is not sufficient. See id. Nor is mere knowledge of the transaction constituting the alleged violation. Gluck, 960 F.2d at 1178. Rather, the defendants must make a

---

occurred, and not any later date on which the plaintiff may have been denied benefits due to his status as an independent contractor.

showing that the plaintiff actually knew not only of the events constituting the breach or violation "but also that those events supported a claim of breach of fiduciary duty or violation under ERISA." Montrose, 243 F.3d at 787. Because the defendants have not made such a showing, the Court will apply ERISA's six-year statute of limitations period to the plaintiff's breach of fiduciary duty claim.

However, even applying a six-year limitations period, the plaintiff's claim is untimely. The correct standard to apply here is six years from the "date of the last action which constituted a part of the breach or violation."[8] The defendants argue that the date that the ICBA was signed is the relevant last action in this case. The Court agrees.

The plaintiff argues that although the date of hire can be the date of last action in some circumstances, it is not necessarily so in all cases. He cites Martin v. Electric & Gas Co., 271 F. App'x 258, 260 (3d Cir. 2008), an unpublished case from the United States Court of Appeals for the Third Circuit, in

---

[8] As explained by the district court in Keen, under Third Circuit law, an employer defendant who fails to correct its employee's mistaken belief breaches its fiduciary duty through an act, rather than an "ongoing omission." The defendants' alleged breach is their categorical decision not to provide benefits to any independent contractors, a decision that was communicated to the plaintiff in the ICBA. The initial act of carving out independent contractors followed by a failure to inform the plaintiff that he misunderstood his entitlements does not transform the initial act into an ongoing omission. See Keen, 486 F. Supp. 2d at 492-93.

which the defendants were alleged to have misclassified the plaintiffs as independent contractors. The defendants argued that the six-year statute of limitations began running on the date that the plaintiff was hired. Id. The Court of Appeals concluded that the limitations period began running some years later when the definition of "participant" in the plan documents was amended to expressly exclude independent contractors. Id. at 261. That amendment qualified as the "last action." Because the Martin court considered plan amendments, the plaintiff here argues that the parties must engage in discovery before the Court can identify the date of last action for the breach.

      The Court disagrees. The "date of the last action" in this case is the date on which the alleged misrepresentations about the pension plans were made. See Ranke, 436 F.3d at 202-03; Martin, 271 F. App'x at 260-61. Here, the plaintiff alleges that the defendants misrepresented that the plaintiff was an independent contractor who was not entitled to participate in employee benefit plans. That occurred on the date that the ICBA was signed.

      In addition, as to Martin, the Court of Appeals in that case found that the date of hire was not the appropriate date of last action because when the plaintiffs were hired, independent contractors were not expressly excluded from the definition of "employee." The Court of Appeals used the date of amendment as

the date of last action because the amendments were what specifically carved out independent contractors as being ineligible for benefits. Martin, 271 F. App'x at 261.

Here, it is not the case that there was confusion over whether independent contractors were excluded from the definition of "employee" - the ICBA specifically states that the plaintiff is a "self-employed independent contractor" who "is not eligible for, and shall not participate in, any employee pension, health, or other fringe benefit plans." The "carve-out" in this case occurred, and the breach was thus completed, on the date that the plaintiff signed the ICBA.[9] For these reasons, even under a six-year statute of limitations, the plaintiff's breach of fiduciary duty claim is untimely.

### B. Breach of Fiduciary Duty - Failure to State a Claim

The defendants argue that the breach of fiduciary duty claim should also be dismissed for failure to state a claim because the plaintiff alleges that the duties he asserts were owed to him directly, rather than to the plan generally. The defendants cite ERISA § 502(a)(2), which allows a civil action

---

[9] The plaintiff has not alleged any part of a breach of fiduciary duty that would be "independent of or other than a mere continuation of" what occurred in 1999. See Martin, 271 F. App'x at 261. He does not allege, for example - not even upon information and belief - that there were any amendments to the plan that might have carved out independent contractors from the definition of "employee" at a later date, as in the Martin case.

15

for breach of fiduciary duty to be brought under ERISA § 409. See 29 U.S.C. § 1132(a)(2). Section 409 states that any person who breaches a fiduciary duty "shall be personally liable to make good to such plan any losses to the plan resulting from each such breach." 29 U.S.C. § 1109(a).

The defendants argue that, under § 502(a)(2), a plaintiff cannot seek to recover benefits allegedly owed to him in his individual capacity. Such relief is only available, they argue, through a denial of benefits claim. The plaintiff responds that even if the theories of recovery for denial of benefits and breach of fiduciary duty are mutually exclusive, there is no case law stating that he cannot pursue both theories of recovery in the alternative at this stage.

In Graden v. Conexant Sys. Inc., 496 F.3d 291 (3d Cir. 2007), the United States Court of Appeals for the Third Circuit explained the difference between breach of fiduciary duty claims and denial of benefits claims. In that case, the plaintiff sued the administrator of his former employer's 401(k) plan for allegedly mismanaging plan assets and thus reducing his share of benefits. The defendants argued that the plaintiff's claim was not a breach of fiduciary claim, but rather, was really a denial of benefits claim. The Court explained that even though the plaintiff sought benefits for himself, it was proper for him to pursue his claim under a theory of fiduciary liability:

> One of the key differences between § 1132(a)(1)(B) and (a)(2) is who is a proper defendant. In a § 1132(a)(1)(B) [denial of benefits] claim, the defendant is the plan itself (or plan administrators in their official capacities only). On the other hand, the defendant in a § 1132(a)(2) [fiduciary liability] claim is a plan fiduciary in its individual capacity. Under the Conexant plan, Graden is entitled to the corpus and proceeds of his prudently invested contributions. We believe that he could demand a full benefit payment from the plan itself under § 1132(a)(1)(B). He, however, had good reason for not bringing such an action. In individual account plans, all of the plan's money is allocable to plan participants. Using a § 1132(a)(1)(B) suit to force the plan to use money already allocated to others' accounts to make good on Graden's loss would present a host of difficulties with which few sensible plaintiffs would want to contend. Indeed, it may be that ERISA's fiduciary obligations prevent plans from paying judgments out of funds allocable to other participants, in which case the plan, though liable, would be judgment proof. Thus, for most plaintiffs the sensible route is to use § 1132(a)(2) to get the money in the first instance from a solvent party liable to make good on the loss, not from the plan itself. This does not, however, change the underlying nature of Graden's claim as one for benefits; it merely changes his mechanism for recovery.

Id. at 301 (citations omitted). Under Graden, the Court sees no reason why the plaintiff may not bring his claims for breach of fiduciary and denial of benefits in the alternative, even if his claim, essentially, is one for benefits.

The parties disagree over the relevance and effect of the Supreme Court's ruling in Larue v. DeWolff, Boberg & Associates, Inc., 128 S. Ct. 1020 (2008). In Larue, a

participant in a "defined contribution plan" alleged that the plan administrator breached his fiduciary duty by failing to follow the plaintiff's investment directions and thus depleting his interest in the plan by approximately $150,000. The United States Court of Appeals for the Fourth Circuit held that ERISA § 502(a)(2) provides remedies only for entire plans, not for individuals. The Supreme Court vacated and remanded, holding that "although § 502(a)(2) does not provide a remedy for individual injuries distinct from plan injuries, that provision does authorize recovery for fiduciary breaches that impair the value of plan assets in a participant's individual account." Id. at 1026.

Even if Larue applies to this case, it does not impact the outcome of the defendants' motion. Under Graden, it is appropriate at this stage to allow the plaintiff to pursue his theories in the alternative.[10] The Court finds that any other limitations that Larue might impose are better considered on

---

[10] As noted by Chief Justice Roberts in his Larue concurrence, the Supreme Court did not reach the issue of whether a plaintiff can bring a claim under both § 502(a)(2) and § 502(a)(1)(B), the provision for denial of benefits. Id. at 1027-28. Citing Graden, he noted that the Third Circuit in particular has "disagreed" with the approach that prevents plaintiffs from recasting what are in essence plan-derived benefit claims that should be brought as claims for denial of benefits as claims for fiduciary breaches. The defendants cite post-Larue district court cases from other circuits holding that plaintiffs may not pursue both claims where one claim is merely repetitive of the other. Nonetheless, the law in the Third Circuit, under Graden, suggests otherwise.

summary judgment. The Court will therefore deny the defendants' motion to dismiss the plaintiff's breach of fiduciary duty claim on this basis.

   C.   <u>Denial of Benefits - Failure to Join Parties</u>

Finally, the defendants argue that the plaintiff's denial of benefits claim should also be dismissed for failure to join all necessary parties under Rule 19. They argue that the plans themselves are necessary defendants for a denial of benefits claim. The plaintiff argues that, at this stage, he does not know the proper plans to sue and the identities of the proper plan fiduciaries. Pl.'s Opp. 5.

The defendants state that the plaintiff's claim that he has not listed the plans because he does not know their respective identities is "dubious at best" because he attached to his opposition a form called "overview of company benefits" that lists the types of benefits available to Delta-T employees. <u>See</u> Defs.' Reply 11. Even if the plaintiff is or should be aware of the identities of the plans, and the plans are necessary parties, this defect does not alone warrant dismissal at this stage. To the extent that the plans are necessary defendants, the Court can order them to be joined under Rule 19(a)(2). The defendants have not stated that joinder of the plans would not be feasible. The

Court will deny the defendants' motion to dismiss the plaintiff's denial of benefits claim under Rule 12(b)(7) at this time.

An appropriate Order shall issue separately.