IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA


TEMI BAMGBOSE, Individually      :        CIVIL ACTION
and on Behalf of All Others      :
Similarly Situated               :
                                 :
          v.                     :
                                 :
DELTA-T GROUP, INC., et al.      :        NO. 09-667


MEMORANDUM

McLaughlin, J.                                February 8, 2010


          The plaintiff, Temi Bamgbose, brought suit individually

and on behalf of others similarly situated against the defendant,

Delta-T Group, Inc. ("Delta-T"),[1] alleging that Delta-T

maliciously misclassified him and other healthcare workers as

"independent contractors" rather than "employees."  He argues

that the misclassification allows Delta-T to evade overtime

compensation requirements under the Fair Labor Standards Act

("FLSA" or "Act").  The plaintiff moves for conditional

collective action certification under the FLSA.  The Court will

deny the plaintiff's motion without prejudice.

_____

          [1] The plaintiff names as defendants in his complaint and his
amended complaint Delta-T Group, Inc.; Delta-T Group Social
Service Staffing, Inc.; and John Does One through Four.  On
August 19, 2009, the Court dismissed without prejudice Delta-T
Group Social Service Staffing, Inc., pursuant to the parties'
stipulation.  Although John Does One through Four remain as
defendants, the Court will refer to Delta-T as the defendant in
this matter.

I.   Background

     A.   Procedural History

          The plaintiff brought suit against the defendant on

February 17, 2009, and he amended his complaint on April 1, 2009,

alleging violations of the FLSA and the Employee Retirement

Income Security Act (ERISA).  On July 6, 2009, the Court

dismissed the plaintiff's ERISA claims, finding that the claims

were not brought within the applicable statute of limitations

periods.

          Before the Court set a discovery schedule, both parties

began class-related discovery.  They contacted putative class

members,[2] took depositions, exchanged 6700 pages of documents,

and gathered declarations.  On July 27, 2009, the plaintiff moved

for FLSA conditional collective action certification and notice.

He attached to his motion twenty-three declarations from Delta-T

healthcare workers; the transcripts from two depositions of Scott

McAndrews, an Executive Vice President of Delta-T; a declaration

from a former Delta-T employee; and several Delta-T documents,

including interoffice memorandums and letters from Delta-T to the

_____

          [2] The defendant filed a motion to order the plaintiff to
cease and desist his contact to putative class members.  It also
filed a motion for miscellaneous relief that requested permission
to communicate with putative class members.  The parties then
came to an agreement with respect to their contact with the
putative class.  In view of the parties' agreement, the Court
denied the defendant's cease and desist motion and granted its
motion for miscellaneous relief.

Department of Labor ("DOL") and the Internal Revenue Service ("IRS").  He also filed notices of consent from people choosing to opt into the collective action.

The defendant opposed the plaintiff's motion, arguing that the putative class is not similarly situated.[3]  It attached eighty-three declarations from Delta-T healthcare workers, two declarations from Delta-T personnel, six depositions, and two expert reports.  The defendant also moved to strike certain portions of the plaintiff's motion exhibits.  The Court held an oral argument on October 22, 2009, on the parties' motions.

During the oral argument, the Court held that it would not consider the defendant's expert reports when deciding the plaintiff's motion because of the plaintiff's inability to depose the defendant's experts.  In an Order on November 3, 2009, the Court granted in part and denied in part the defendant's motion to strike.  It held that it would not consider legal conclusions in the plaintiff's attached declarations and that it would strike the declaration of the former Delta-T employee.

---

[3] The defendant also argued that the plaintiff's class definition is defective, the plaintiff is an inadequate representative, and fairness and procedural concerns make a collective action improper.

B.  <u>Factual Record</u>[4]

Delta-T is a "temporary staffing agency"[5] that hires healthcare workers[6] and places them in various healthcare facilities when such facilities require staffing.  Its headquarters are located in Pennsylvania, and it commonly owns twelve affiliates with active operations in Maryland, New Jersey, Massachusetts, Illinois, Virginia, Connecticut, Michigan, California, and Arizona.  Each affiliate is separately incorporated and has its own management and organizational structure.  Declaration of Scott McAndrews, Executive Vice

_____

[4] When deciding a motion for conditional collective action certification, courts examine the pleadings and affidavits in support of or in opposition to the motion to determine whether members are "similarly situated."  <u>See</u> <u>Aquilino v. The Home Depot, Inc.</u>, No. CIV 04-CV-4100 PGS, 2006 WL 2583563, at *1 (D.N.J. Sept. 7, 2006).  The court does not make any credibility determinations or findings of fact when presented with contrary evidence.  <u>See</u> <u>Dominquez v. Minn. Beef Indus., Inc.</u>, No. 06-1002 (RHK/AJB), 2007 WL 2422837, at *2 (D. Minn. Aug. 21, 2007).  The Court will not consider the defendant's expert analysis provided in the opposition brief, nor the legal conclusions in the healthcare workers' declarations and the declaration of the Delta-T former employee provided in the plaintiff's brief.

[5] The plaintiff refers to Delta-T as a "temporary staffing agency."  Delta-T refers to itself as a "referral service" or "referral agency."  The Court will refer to Delta-T as a "temporary staffing agency" for sake of consistency, and without an evaluation of the merits of the parties' arguments.

[6] The plaintiff refers to the persons at issue in this litigation as "healthcare workers."  The defendant refers to them as "independent contractors" or "professionals."  The Court will refer to the persons at issue as "healthcare workers" or "workers" for sake of consistency, and without an evaluation of the merits of the parties' arguments.

President of Delta-T Group, Inc. ("McAndrews Decl.") ¶¶ 1, 3, Ex.
D-1 to Def.'s Opp.; Part One of Deposition of Scott McAndrews ("1
McAndrews Dep.") 40:9-41:13, 47:1-23, Ex. 5 to Pl.'s M. for
Conditional Collective Action Certification("Pl.'s M.").

The healthcare facilities that contract with Delta-T,
known as Delta-T's "clients," operate in a variety of settings:
outpatient clinics, hospitals, psychiatric inpatient facilities,
residential treatment facilities, correctional facilities,
individual family homes, community centers, long-term care
facilities, shelters, drug and alcohol rehabilitation facilities,
schools, military institutions, foster care homes, child care
centers, and independent living centers. Client opportunities
within these settings arise from seven different fields: (1)
psychiatry/psychology, (2) nursing, (3) counseling, (4) child and
family treatment, (5) special education, (6) behavioral health,
and (7) therapy. Within any one of these fields, there are
dozens of different job titles and functions. Client needs vary
from state to state. McAndrews Decl. ¶¶ 4, 5, and Ex. D-3; see
Declaration of Lori Calcaterra, Senior Operations Manager of
Delta-T Group North Jersey, Inc. and Delta-T Group Maryland, Inc.
("Calcaterra Decl.") ¶¶ 4-5, Ex. D-2 to Def.'s Opp.

The healthcare workers who register with Delta-T have a
variety of educational backgrounds and skill sets, which makes
them qualified for different client opportunities. Some workers

have doctorates and other advanced degrees.  Others have a degree

no higher than a high school diploma.  Delta-T connects the

healthcare workers to the client opportunities based on the

workers' credentials.  Def.'s Opp. Ex. G-1, Index § A;[7] see

Calcaterra Decl. ¶ 12.

According to the active registry population since 2005,

there are approximately 11,000 active, registered healthcare

workers with Delta-T.[8]  Regardless of the differences among these

healthcare workers, Delta-T categorizes all of them as

independent contractors for tax and compensation purposes.  All

healthcare workers complete an Independent Contractor Broker

Agreement and Services Agreement to register with Delta-T.

Declaration of Dr. Ali Saad, Labor Economist, ¶ 1 n.1, Ex. C-2 to

Def.'s Opp.; Calcaterra Decl. ¶ 18; Part Two of Deposition of

Scott McAndrews ("2 McAndrews Dep.") 170:24-171:8, Ex. 6 to Pl.'s

M.; 1 McAndrews Dep. 116:5-117:8; IC Broker Agreement, Ex. 9 to

Pl.'s M.; Services Agreement, Ex. A to Def.'s Opp.

---

[7] Index § A to the defendant's exhibit G-1 lists the
defendant's eighty-three declarants and provides the declarants'
names, categories of employment, titles of employment, education
levels, occupations, and states in which they work.

[8] The defendant presents this figure in an expert report
attached to its opposition brief.  The plaintiff notes that this
number is an inaccurate reflection of the putative class because
it includes workers outside the applicable three-year statute of
limitations.  Because the Court does not address manageability
concerns, the precision of this number will not affect the
Court's analysis.

### 1. Delta-T's Operations

Although Delta-T's affiliate offices are independent corporations, they share some services, such as an interoffice phone system and an intranet.  All of the affiliates employ staffing coordinators who are responsible for matching healthcare workers with clients.  The staffing coordinators inform the healthcare workers about client opportunities, when and where to appear for work, and what the work will be.  Workers are then free to accept or reject the opportunities, and they may hire others to fulfill the client opportunities on their behalf.  When the workers accept an opportunity, they perform the services at the client's facility or at a location specified by the client. 2 McAndrews Dep. 228:1-230:24; Calcaterra Decl. ¶¶ 7, 14; Services Agreement, ¶ 3(f); McAndrews Decl. ¶ 6.

Delta-T reserves the right to terminate assignments offered to healthcare workers if the workers breach their contracts by, for example, misrepresenting their credentials or engaging in billing fraud.  Healthcare workers may terminate relationships with clients, and clients may remove healthcare workers from an assignment.  IC Broker Agreement ¶ 2; McAndrews Decl. ¶ 12; Calcaterra Decl. ¶ 26; Def.'s Opp. Ex. G-1, Index § B 5;[9] Client Agreement ¶ 3, Ex. 12 to Pl.'s M.

---

[9] Index § B to the defendant's exhibit G-1 lists facts addressed in the defendant's declarations and includes the corresponding declarant and paragraph number.  Reference to a

2.  <u>Healthcare Workers' Compensation</u>

To receive compensation, a healthcare worker submits paperwork to Delta-T that details his or her hours worked. Delta-T then issues a bill to the client. Once payment is received from the client, Delta-T issues a check to the healthcare worker, retaining a portion for itself. Delta-T does not pay any of the healthcare workers time-and-a-half for hours worked in excess of forty in a week. McAndrews Decl. ¶ 16; Def.'s M. 10; Pl.'s M. 11-12 and Ex. 3 (a)-(j), (l)-(s), (u)-(w) ¶ 10, (k), (t) ¶ 11.[10]

The plaintiff presents declarations from healthcare workers who state that they cannot negotiate with clients to set pay rates. The defendant presents declarations demonstrating that some healthcare workers are able to negotiate their compensation directly with the clients. Pl.'s M. Ex. 3 (a)-(j), (l)-(s), (u)-(w) ¶ 9; Deposition of Temi Bamgbose ("Bamgbose Dep.") 292:12-18, Ex. 4 to Pl.'s M.; Calcaterra Decl. ¶¶ 14, 20; Def.'s Opp. Ex. G-1, Index § B 14, 15.

Not all healthcare workers rely on Delta-T for their primary source of income. Workers can and do maintain private

_____

number in Index § B is a reference to the corresponding fact statement and the specific declarations and paragraph numbers.

    [10] The plaintiff's exhibit three attached to his motion contains twenty-three declarations from Delta-T healthcare workers.

practices and register on multiple registries outside of Delta-T. Def.'s Opp. Ex. G-1, Index § B 8, 16, 22.

### 3. Relationship between Delta-T and Healthcare Workers

The plaintiff and the defendant present evidence to demonstrate Delta-T's relationship with healthcare workers. The plaintiff's declarations from healthcare workers shows that some staffing coordinators call and, in some cases, visit healthcare workers to inquire about an assignment. Sometimes the staffing coordinators speak to the client supervisors to ensure that the healthcare workers do an adequate job. He also presents evidence that Delta-T requires some health care workers, such as those who do work for clients Department of Children and Families ("DCF") and New Jersey Partnership for Children, to submit progress reports or case notes directly to Delta-T in order to receive a paycheck. Pl.'s M. Ex. 3(a)-(c), (g), (i), (j), (n), (p)-(r), (u), (v) ¶ 12; Interoffice Memorandum, Exs. 25 and 27, attached to Pl.'s M.

The defendant presents evidence that Delta-T does not supervise the healthcare workers' work, nor does it require any progress reports or case notes. Although some clients may require progress notes, declarants for the defendant state that they never provide these notes to Delta-T. Further, Delta-T states that it does not solicit performance evaluations for

healthcare workers.  Calcaterra Decl. ¶¶ 10-11, 23; Def.'s Opp.
Ex. G-1, Index § B 1, 4.

The plaintiff and defendant also present evidence with
respect to a healthcare worker's schedule.  The plaintiff's
declarants state that they must seek permission from Delta-T to
take on additional hours or responsibilities for a client, and
that the healthcare workers must inform staffing coordinators of
any scheduling changes.  The defendant's declarations demonstrate
that healthcare workers and the clients negotiate over and
determine the healthcare workers' schedule, scope of
responsibilities, and length of contract.  It also offers
evidence that healthcare workers discuss scheduling problems with
the clients directly.  Pl.'s M. Ex. 25; Calcaterra Decl. ¶ 20;
McAndrews Decl. ¶ 6; Def.'s Opp. Ex. G-1, Index § B 13.

The plaintiff and defendant also present conflicting
evidence with respect to materials a healthcare worker may need
in the course of his or her work for a client.  The plaintiff
demonstrates in declarations that the clients provide the
equipment and materials that healthcare workers need to perform
their duties.  The defendant offers evidence that some healthcare
workers purchase materials to use at client sites because of the
kind of work they do or populations they service.  For example,
one healthcare worker who provides therapeutic support for
children buys children's games, books, and stationery to use in

her work.  Delta-T does not reimburse the healthcare workers for
these expenses, and the healthcare workers deduct these expenses
from their taxes.  Pl.'s M. Ex. 3 (a)-(h), (j), (l)-(s), (u)-(w)
¶ 6, (i), (k), (t) ¶ 7.  Def.'s Opp. Ex. G-1, Index § B 10;
Def.'s Opp. Ex. G-14 ¶ 20.

II.  Analysis

        The plaintiff alleges that the healthcare workers who
register with Delta-T are employees and not independent
contractors.  He further alleges that the defendant violated the
FLSA because the defendant does not pay these healthcare worker
employees time-and-a-half for overtime.  The plaintiff seeks to
conditionally certify a collective action comprising any
healthcare worker who, within the applicable time period, was
placed by Delta-T as an independent contractor and who worked
more than forty hours in a week on occasion.  He also seeks
court-facilitated notice to potential plaintiffs who may choose
to opt into the collective action, and an electronic file from
the defendant containing putative class members' identifying
information.

        The FLSA requires employers to pay their employees one
and one-half times the employees' hourly wage for hours worked in
excess of forty hours per week.  29 U.S.C. §§ 206, 207 (2009).
The Act provides for a court to certify a proposed group of
similarly situated employees who wish to bring a lawsuit as a

collective action alleging a violation of the FLSA. 29 U.S.C. §
216(b) (2009).[11] Unlike Federal Rule of Civil Procedure Rule 23,
§ 216(b) requires class members to affirmatively opt in to FLSA
collective actions. See id.

Plaintiffs bear the burden of demonstrating that the
proposed class satisfies two basic requirements: (1) class
members are "similarly situated," and (2) class members
affirmatively opt into the action. Chabrier v. Wilmington Fin.,
Inc., No. 06-4176, 2008 WL 938872, at *2 (E.D. Pa. Apr. 4, 2008);
Aquilino v. The Home Depot, Inc., No. CIV 04-CV-4100 PGS, 2006 WL
2583563, at *1 (D.N.J. Sept. 7, 2006); Morisky v. Pub. Serv.
Elec. & Gas Co., 111 F. Supp. 2d 493, 496 (D.N.J. 2000).
District courts may facilitate notice to putative class members
so that they may opt into the action. Hoffmann-La Roche, Inc. v.
Sperling, 493 U.S. 165, 169-70 (1989).

A.   Conditional Certification

Courts engage in two stages of analysis when
considering certification of an FLSA collective action. See,
e.g., Lusardi v. Lechner, 855 F.2d 1062, 1065-67 (3d Cir. 1988).

---

[11] "An action to recover . . . liability . . . may be
maintained against any employer . . . by any one or more
employees for and in behalf of himself or themselves and other
employees similarly situated. No employee shall be a party
plaintiff to any such action unless he gives his consent in
writing to become such a party and such consent is filed in the
court in which such action is brought." 29 U.S.C. § 216(b).

The first stage, sometimes referred to as the "notice stage," is conducted early in the litigation and involves a preliminary inquiry into whether the plaintiff's proposed class is similarly situated.  Morisky, 111 F. Supp. 2d at 497.  The purpose of this stage is to facilitate notice and discovery.  Id.  Courts typically require a "modest factual showing" that the putative class members are similarly situated, particularly when the parties have engaged in some discovery.  See, e.g., Bishop v. AT&T Corp., 256 F.R.D. 503, 507 (W.D. Pa. 2009); Smith v. Sovereign Bancorp Inc., No. 03-2420, 2003 WL 22701017, at *3 (E.D. Pa. Nov. 13, 2003).

The second stage, sometimes referred to as the "decertification stage," is conducted at the close of class-related discovery when the defendant may move to decertify the class.  Smith, 2003 WL 22701017, at * 1.  Courts require a higher level of proof that the class is similarly situated because the parties have concluded discovery and the court has more information from which to make its assessment.  See Morisky, 111 F. Supp. 2d at 497; see also 7B Charles Alan Wright, Arthur R. Miller, & Mary Kaye Kane, Federal Practice & Procedure § 1807 (3d ed. 2005) ("At this stage, the court will again make its certification decision based on the 'similarly situated' standard, but with the addition of much more information about the parties and their claims.  Thus, courts in this second stage

require a higher level of proof than for initial conditional certification.").

Because the parties in this action have engaged in discovery related to the class certification issue, the Court will evaluate the putative class under stage one, requiring a modest factual showing that the putative class is similarly situated.

B.    Similarly Situated

The plaintiff argues that the putative class is similarly situated because Delta-T has a uniform policy of classifying all healthcare workers as independent contractors. He asserts that courts routinely find a putative class to be similarly situated when the class members are subject to the same company-wide classification.  The plaintiff also argues that the healthcare workers are similarly situated because Delta-T has a uniform relationship with its healthcare workers: Delta-T's affiliate offices are commonly owned; the offices share certain resources, such as an intranet and telephone system; staffing coordinators in all of the offices determine which healthcare workers receive opportunities, and they are involved in the relationships between the healthcare workers and clients; and Delta-T uses the same process to pay all healthcare workers.  He urges the Court to find that Delta-T is precluded from arguing that its healthcare workers are not similarly situated because

14

Delta-T made representations to the DOL and IRS that the workers were similar.  See Letter from Delta-T to DOL, (Aug. 28, 2006), Ex. 14 to Pl.'s M; Letter from Delta-T to IRS (Nov. 16, 2000), Ex. 13 to Pl.'s M.

The Court must analyze whether the healthcare workers are similarly situated with respect to the analysis it would engage in to determine whether the workers are employees or independent contractors.  The Court cannot only look to Delta-T's uniform classification of the workers or its common payment procedures, intranet, and telephone systems.[12]  Instead, it must determine whether the proof to demonstrate that the workers are "employees" or "independent contractors" can be applied to the class as a whole.  See, e.g., Sperling, 493 U.S. at 170 (noting that collective actions allow plaintiffs the advantage of lower individual costs by collectively bringing one proceeding of

---

[12] Some cases note that a uniform classification renders the class similarly situated for FLSA conditional certification purposes.  E.g., Westfall v. Kendle Int'l CPU, L.L.C., No. 1:05-cv-00118, 2007 WL 486606, at *8-9 (N.D. W. Va. Feb. 15, 2007); Aquilino, 2006 WL 2583563, at *2; Lee v. ABC Carpet & Home, 236 F.R.D. 193 (S.D.N.Y. 2006).  When confronted with an employee/independent contractor conditional certification motion, however, courts also look to see if the class is similarly situated with respect to the factors that determine whether a worker is an employee.  See Westfall, 2007 WL 486606, at 8-9; Lee, 236 F.R.D. at 198 (noting court's previous application of factors to find class similarly situated).  Application of a uniform policy may render a class similarly situated for cases involving different FLSA violations or workers all holding the same job title.  See Aquilino, 2006 WL 2583563 (conditionally certifying collective action of merchandise assistant sales managers alleging misclassification as "exempt" employees).

15

common issues of law and fact); <u>Westfall v. Kendle Int'l CPU,</u>
<u>L.L.C.</u>, No. 1:05-cv-00118, 2007 WL 486606, at *8-9 (N.D. W. Va.
Feb. 15, 2007) (evaluating similarly situated status of workers
for FLSA conditional certification based on factors to determine
if workers are employees).

The FLSA broadly defines "employee" as "any individual
employed by an employer." <u>See</u> 29 U.S.C. § 203(e)(1)(2009);
<u>Martin v. Selker Bros., Inc.</u>, 949 F.2d 1286, 1293 (3d Cir. 1991).
The Supreme Court has held that courts are to look to the
"circumstances of the whole activity" to determine whether an
employment relationship exists. <u>Rutherford Food Corp. v. McComb</u>,
331 U.S. 722, 730 (1947). The Court of Appeals for the Third
Circuit developed several criteria, none of which is dispositive,
to evaluate whether a worker is an employee: (1) the degree of
the alleged employer's right to control the manner in which the
work is to be performed; (2) the alleged employee's opportunity
for profit or loss depending upon his managerial skill; (3) the
alleged employee's investment in equipment or materials required
for his task, or his employment of helpers; (4) whether the
service rendered requires a special skill; (5) the degree of
permanence of the working relationship; and (6) whether the
service rendered is an integral part of the alleged employer's
business. <u>Martin</u>, 949 F.2d at 1293. In addition, the court
should consider whether, as a matter of economic reality, the

individuals are dependent upon the business to which they render service.  Donovan v. DialAmerica Mktg., Inc., 757 F.2d 1376, 1382-83 (3d Cir. 1985).

In view of these factors, the plaintiff has not made a modest factual showing that the putative class is similarly situated.  The record demonstrates that the healthcare workers have a wide array of skills, responsibilities, and experiences with Delta-T and its clients.  Evaluation of whether the healthcare workers are employees or independent contractors, based on the current record, would not be possible on a collective basis because it would require the Court to examine the healthcare workers' distinct relationships with Delta-T and its various clients.  See Pfaahler v. Consultants for Architects, Inc., No 99 C 6700, 2000 U.S. Dist. LEXIS 1772 (N.D. Ill. Feb. 11, 2000).

With respect to the control factor, evidence relevant to evaluate this factor includes the degree of supervision over the worker, control over the worker's schedule, and instruction as to how the worker is to perform his or her duties.  See Baystate Alternative Staffing, Inc. v. Herman, 163 F.3d 668, 675-76 (1st Cir. 1998); Donovan, 757 F.2d at 1383-84.  Although Delta-T determines for every healthcare worker which workers receive client opportunities, other evidence responsive to the degree of control varies depending on the worker and the client.

For example, some evidence demonstrates that Delta-T supervises the work of certain healthcare workers, such as those who work for DCF, to the extent that it requires these workers to submit progress notes to Delta- T.  Other workers who work with different clients do not need to submit any progress notes. Proof of control based on a DCF worker's required progress notes would not apply collectively to the putative class.  Compare, e.g., Pl.'s M. Ex. 25, and Pl's M. Ex. 3(c) ¶ 12, with Def.'s Opp. Ex. G-6 ¶ 12, and Def.'s Opp. Ex. G-15 ¶ 7.

The plaintiff and the defendant also present opposing evidence with respect to the worker's control over his or her schedule, demonstrating that this control varies with the worker and the client.  The defendant puts forward evidence that healthcare workers are free to accept or reject client offers, and the workers negotiate their schedule and scope of responsibilities with the client directly.  The plaintiff's evidence demonstrates that some healthcare workers can only contact Delta-T about their work schedules.  Compare, e.g., Calcaterra Decl. ¶ 20, and Def.'s Opp. Ex. G-1, Index § B 1, 3, and 13, with Pl.'s M. Ex 3 (a)-(j), (l)-(s), (u)-(w) ¶ 12, and Bamgbose Dep. 292:12-18.

The plaintiff attempts to avoid the issue of Delta-T's degree of control over the healthcare workers by arguing that Delta-T's clients, who can be considered "joint employers" with

Delta-T, exert control over the workers to any extent that Delta-T does not.  See 29 C.F.R. § 791.2(b).[13]  A determination of the joint employer relationship and the control a client exerts over a healthcare worker, however, may vary dramatically depending on the client.  Delta-T contracts with different clients, ranging from major healthcare institutions to family homes, throughout the ten states in which it operates.  Proof of the joint employer status between Delta-T and these clients, and proof of the clients' control over the many different healthcare workers would differ.  See Pl.'s M. 6-13; Hr'g Tr. 43:4-16, Oct. 22, 2009; Def.'s Opp. Ex. G-1, Index § B 1; McAndrews Decl. ¶ 5. Compare, e.g., Def.'s Opp. Ex. G-14 ¶ 13 (noting no supervision from client or Delta-T), with Pl's M. Ex. 3(c) ¶ 12 (noting supervision from client and Delta-T).

     With respect to the Martin factor regarding profit or loss, evidence that may be relevant to its evaluation includes the workers' abilities to negotiate their pay with Delta-T and with clients directly, and their abilities to manage and hire others to perform the services for clients.  See Baystate, 163

---

[13] A joint employer relationship may exist "[w]here the employee performs work which simultaneously benefits two or more employers, . . . [and] [w]here the employers are not completely disassociated with respect to the employment of a particular employee and may be deemed to share control of the employee, directly or indirectly, by reason of the fact that one employer controls, is controlled by, or is under common control with the other employer.  29 C.F.R. § 791.2(b) (2010).

F.3d at 675-76; <u>Donovan</u>, 757 F.2d at 1386.  Again, evidence to prove this factor would vary, depending on the workers and the clients.  The defendant offers evidence that workers can and sometimes do hire others to perform the services for the clients, and some workers can negotiate their compensation directly with the client.  Declarations from the plaintiff demonstrate that some workers are unable to engage in such negotiations.  <u>Compare</u> Def.'s Opp. Ex. G-1, Index § B 9, 14, <u>and</u> Def.'s Opp. Ex. G-42 ¶ 16, <u>with</u> Pl.'s M. Ex 3 (a)-(j), (l)-(s), (u)-(w) ¶ 9.

Evidence to determine the degree of skill and the investment of materials required for services rendered would also be inapplicable to the putative class as a whole because of the variations within the class.  Some client opportunities require a worker to have a doctorate or other advanced degree, although other opportunities only require a worker to have a high school diploma.  Declarations also demonstrate that different client opportunities require workers to bring their own equipment, although others do not.  <u>Compare</u>, <u>e.g.</u>, Def.'s Opp. Ex. G-1, Index §§ A, B 10, 17, <u>and</u> Calcaterra Decl. ¶ 12; <u>with</u> Pl.'s M. Ex 3 (a)-(j), (l)-(s), (u)-(w) ¶ 6.

Additionally, proof of the permanence of the working relationship and whether the workers are dependent upon the business to which they render service would also be inapplicable to the class collectively.  Both factors look to whether the

20

working relationship is transitory.  Donovan, 757 F.2d at 1384-
85; see Brock v. Superior Care, Inc., 840 F.2d 1054, 1060 (2d
Cir. 1988).  Evidence from the record demonstrates that some
workers are registered on multiple registries, and some workers
operate their own practices outside of their work with Delta-T.
Def.'s Opp. Ex. G-1, Index § B 16, 22.

          The only factor for which an evaluation as a collective
might be possible, based on the current record, is whether the
service rendered is an integral part of Delta-T's business.
Delta-T is in the business of connecting workers to clients,
regardless of the differences among the workers and the different
clients who contract with Delta-T.  See Brock, 840 F.2d at 1059.
A collective action, however, cannot be maintained when the class
appears similarly situated with respect to only one factor.

          The plaintiff points to cases in which courts
determined that workers of temporary staffing agencies were
actually employees, to demonstrate that collective adjudication
is proper.  The facts and procedural postures of those cases,
however, are materially different from the case at hand.  First,
the cases involve defendants that uniformly supervised their
workers, or workers who all perform the same exact duties.
Second, the cases address the merits of the litigation and not
the similarly situated inquiry.  Baystate, 163 F.3d 668 (holding
DOL determination that temporary employment agencies for

unskilled workers were "employers" was not arbitrary, capricious, or contrary to law); Brock, 840 F.2d 1054 (affirming district court finding that defendant's nurses were employees in part because the defendant visited the nurses and required patient-related notes); Westfall, 2007 WL 486606 (finding workers with different titles to be employees because the defendant instructed the workers how to do their work, provided the workers' equipment and materials, and created the workers schedules).

Delta-T's past representations expressing the similarities among its workers does not change the Court's analysis. Although Delta-T may have represented to the DOL and IRS that its workers were similar, in order to argue that they were properly classified as independent contractors, the Court cannot rely on these representations to find the workers similarly situated for FLSA collective action purposes. The Court would still be forced to confront the workers' differences when applying the Martin factors in subsequent proceedings.

The plaintiff argues that he could establish subclasses at a later stage in the litigation to account for the variances among the healthcare workers. The potential to establish subclasses later in this action, however, does not adequately address the Court's current concerns. If, after the parties complete discovery and develop the record, subclasses become appropriate, the plaintiff may then renew his motion for class

certification and propose subclasses.

III. <u>Conclusion</u>

       For the reasons herein stated, the plaintiff's motion for FLSA conditional collective action certification and judicial notice is denied without prejudice.  An appropriate order shall issue separately.