```
              IN THE UNITED STATES DISTRICT COURT
           FOR THE EASTERN DISTRICT OF PENNSYLVANIA


TEMI BAMGBOSE, Individually    :    CIVIL ACTION
and on Behalf of All Others    :
Similarly Situated             :
                               :
          v.                   :
                               :
DELTA-T GROUP, INC., et al.    :    NO. 09-667
```

MEMORANDUM

McLaughlin, J.                                                                                   December 9, 2011

      This case is a putative collective action under the Fair Labor Standards Act ("FLSA"). A related action, brought as a class action under Fed. R. Civ. P. 23, exists in the United States District Court for the Southern District of California, captioned <u>Norris-Wilson, et al. v. Delta-T Group, Inc., et al.</u>, Civ. No. 09-916 (the "California Action"). The parties exchanged term sheets reaching an agreement in principle for both actions in March 2011. In the California Action, a dispute exists over the scope of the settlement class as defined in the term sheet for that action; the <u>Norris-Wilson</u> plaintiffs filed a motion to enforce the settlement agreement in that court.

      The plaintiffs also moved to enforce the settlement agreement in this case. The defendants contend that the existence of an enforceable settlement in this action is contingent on a settlement in <u>Norris-Wilson</u>, and the plaintiffs argue that the term sheet in this action is separately enforceable. Accepting as true the defendant's assertions in

opposition to the plaintiffs' motion, the Court will grant the plaintiffs' motion.

I. Background

This case was filed in February 2009 as a nationwide FLSA collective action seeking to include a class of healthcare professionals whom the plaintiffs alleged were misclassified as independent contractors and paid inappropriately under the FLSA. The Court denied the plaintiffs' motion for conditional certification of a plaintiff class without prejudice. ECF No. 143. The plaintiffs filed a second amended complaint in July 2010. After a discovery schedule was entered and the plaintiffs were given a deadline by which they again could seek conditional certification, the Court suspended all deadlines so that the parties could pursue a settlement. The stay was extended multiple times. ECF Nos. 207, 215, 224, 226. On March 8, 2011, the Court granted the parties' joint motion to stay proceedings pending approval of a settlement. ECF No. 231. The defendants then unilaterally moved to continue the stay, citing a dispute over the scope of the settlement class in Norris-Wilson; the Court granted that motion. ECF Nos. 235, 236. The plaintiffs here then filed the instant motion to enforce the settlement agreement.

In the California Action, the parties dispute the

meaning of a paragraph in that action's term sheet defining the scope of the settlement class. The relevant provision states that the settlement class would be modified prior to the filing of settlement papers "to only include those who have alleged damages under records produced by Defendants." Norris-Wilson Term Sheet ¶ 6, Decl. of Gerald L. Maatman, Jr., Def. Opp. Ex. 2-A ("Maatman Decl."). The plaintiffs in the California Action have argued that the paragraph provides for the exclusion of parties from the settlement class who have no recorded overtime hours under the defendants' records; the defendants argue that it does not exclude those individuals because the settlement there also resolves claims under California law for wage statement and "waiting time" penalties. In that action, either party disputes that a settlement was reached. See Def. Opp. 5-8, Norris-Wilson (S.D. Cal. No. 09-916 ECF No. 87).

II. Facts[1]

The parties pursued a settlement of both this action and Norris-Wilson with the assistance of a private mediator who conducted two full-day mediation sessions in Philadelphia on December 3, 2010 and January 4, 2011. During this period the defendants retained James Boudreau as special settlement counsel

---

[1] The facts unless otherwise noted are taken as true from the defendants' assertions in opposition to the plaintiffs' motion. Where facts are taken from the plaintiffs' moving papers, they are undisputed.

to negotiate with the plaintiffs' counsel. Mr. Boudreau recalls that "Delta-T was always very clear that the Norris-Wilson and Bamgbose cases must both be settled or neither would settle." Decl. of James Boudreau ¶ 6, Def. Opp. to Pl. Mot. Ex. 1 ("Boudreau Decl.") (filed under seal).

After the mediation sessions failed to resolve the matter, the parties continued to discuss a settlement both with and without the mediator's assistance. Throughout February and March 2011, Rebekah Bailey, counsel for the plaintiffs, continued to discuss the possibility of settlement with Mr. Boudreau.

On February 11, 2011, Bailey sent an email to Boudreau seeking to confirm that the parties had settled this action. The email stated: "By my calculations, we appear to have come to an agreement in the Bamgbose matter. I have attached a signed term sheet specific to this case. If your clients agree please sign and return." Boudreau responded by stating that his impression was that both this action and Norris-Wilson had been settled, and added that "Delta-T has always conditioned the settlement of one case on the settlement of all, so I doubt they see it your way if you contend that Norris-Wilson is not resolved. Regardless, I'll forward your email and someone will be in touch." Bailey replied, "If your clients are interested in settling them together, I've attached two alternative term sheets for Norris-

Wilson for their review."[2]  Boudreau Decl. ¶ 7.

On March 2, 2011, Gerald Maatman, counsel for Delta-T, sent a letter to Bailey stating:

> To confirm our discussion earlier today, my client Delta-T Group, Inc., agrees to a settlement in principle of the above-referenced matters in accordance with the material terms set forth in the most recent term sheets exchanged by the Parties.
>
> I have attached copies of those most recent term sheets, to which we agree in principle, except that the joint motions for preliminary approval should be filed on March 23 instead of March 4.  We will incorporate these terms into a formal settlement agreement and send it to you for review.

Ltr. from Gerald Maatman to Rebekah Bailey ("Maatman Ltr."), Maatman Decl. Ex. 2-A.

Attached to Maatman's letter were two of the term sheets that Bailey had sent on February 11, one for each case. The term sheets were entitled separately with case captions (i.e., Norris-Wilson v. Delta-T Group, Inc. and Bamqbose v. Delta-T Group, Inc.), included separate amounts the defendants would pay, separately described the scope of the releases in each matter, and described the process by which the parties would submit the settlement for final approval and disburse checks in

---

[2] At oral argument plaintiffs' counsel clarified that although at one point the parties had exchanged a potential term sheet settling both cases on its face, no settlement was reached using such a term sheet.  The alternative Norris-Wilson term sheets mentioned in Bailey's reply email of February 11 refer to alternative scopes of release in that case that were being discussed at the time.  Tr. Hr'g 11/10/11 at 10-11.

satisfaction of the settlement.  Id.  Bailey responded later in the day on March 2 confirming that the parties had reached an agreement in principle, and accepting the change in settlement approval dates proposed by Maatman.  Aff. of Rebekah Bailey, Pl. Mot. to Enforce Ex. ("Bailey Aff."), Ex. A at 5.

When the dispute arose in the California Action over the scope of the settlement class, the parties attempted to resolve it in a series of telephone conferences involving the mediator, Bailey, Boudreau, Maatman, and other attorneys.  In a telephone conference on March 16, counsel for the defendants stated that they would not move forward with the settlement, and the plaintiffs moved to enforce the settlements in this Court and in the California Action.  Bailey Aff. ¶¶ 17-21.

The defendants moved to continue the stay in this Court the following day, maintaining that "it had always been Delta-T's understanding . . . that there would be a global settlement such that this matter can not settle if the Norris-Wilson matter does not settle."  Def. Mot. to Continue Stay ¶ 4, ECF No. 235.  The Court entered an order confirming that "discovery deadlines continue to be suspended" along with all proceedings unrelated to settlement.  Order to Continue Stay, ECF No. 236.

The plaintiffs argue that a binding agreement was reached on March 2, 2011 when Maatman sent the email to Bailey attaching the term sheets.  The defendants maintain that

settlement of this matter is contingent on Norris-Wilson settling. The defendants initially requested that the Court continue the stay in this case until the pending motion in the California Action is decided. Def. Opp. 9-10. At oral argument, the defendants claimed that the conditional nature of the settlement here required that the Court wait not only until the California court had ruled on the motion, but also approved the class settlement pursuant to Fed. R. Civ. P. 23. Tr. Hr'g 35-36. At a minimum, the defendants argue that the term sheet in this matter is unenforceable because "the parties are in dispute over a material settlement term," namely whether the settlements are dependent upon each other. Def. Opp. 7.

III. Discussion

A motion for enforcement of a settlement agreement resembles a motion for summary judgment; accordingly, district courts are to apply a similar standard of review. Tiernan v. Devoe, 923 F.2d 1024, 1031-32 (3d Cir. 1991). The court is to treat all of the nonmovant's assertions as true, and "when these assertions conflict with those of the movant, the former must receive the benefit of the doubt." Id. at 1032. Thus, the plaintiffs' motion will be granted only if "there is no genuine issue of material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). If material facts are in dispute as to the existence or terms of an

agreement to settle, a district court should not grant a motion to enforce a settlement agreement without holding an evidentiary hearing. Tiernan, 923 F.2d at 1031. By contrast, "no hearing is necessary where there is no dispute as to the existence of a settlement." Id. Pursuant to Tiernan, the Court takes all of the defendants' assertions as true in evaluating the instant motion.

Settlement agreements are governed by the principles of contract law. McDonnell v. Ford Motor Co., 643 A.2d 1102, 1105 (Pa. Super. Ct. 1994). "If parties agree on the essential terms of a contract and intend them to be binding, a contract is formed even though they intend to adopt a more formal document with additional terms at a later date." Id. at 1106; accord Goldman v. McShain, 247 A.2d 455, 459 (Pa. 1968). Where a written agreement is clear and unambiguous, the intent of the parties is "found only in the express language of the agreement." Shovel Transfer & Storage, Inc. v. Pa. Liquor Control Bd., 739 A.2d 133, 136 (Pa. 1999). To be enforceable, "the nature and extent of [the contract's] obligation must be certain; the parties themselves must agree upon the material and necessary details of the bargain." Am. Eagle Outfitters v. Lyle & Scott, Ltd., 584 F.3d 575, 585 (3d Cir. 2009). Enforceable settlement agreements must include all material terms. "If, however, there exist 'ambiguities and undetermined matters which render a settlement

impossible to understand and enforce' such an agreement must be set aside." Mazzella v. Koken, 739 A.2d 531, 536-37 (Pa. 1999). Settlement agreements can be enforced where the terms are "sufficiently definite to be specifically enforced," which is a question of law for the court. American Eagle, 584 F.3d at 585; see also Murphy v. Duquesne Univ. of the Holy Ghost, 777 A.2d 418, 430 ("The meaning of an unambiguous written instrument presents a question of law for resolution by the court.").

      Here, the term sheet entitled Bamgbose v. Delta-T Group, Inc. attached to Maatman's email of March 2 is sufficiently clear to be specifically enforced.  That document represents the parties' full written agreement in this matter and is unambiguous.  It contains all material terms, including monetary terms; the allocation of settlement proceeds; a definition of the class; the claims included in the release; a time limitation on acceptance of the settlement; tax treatment for settlement payments; a contingency for the defendants to revoke the settlement if insufficient participation occurs; and a time frame for disbursal of payments, among other terms.

      The term sheet is not impossible to understand. Although the defendants insisted throughout negotiations that they intended to settle this matter and Norris-Wilson globally, such a term appears in neither the term sheets exchanged by counsel nor in the accompanying note of acceptance by Maatman,

which agrees to settle "in accordance with the material terms set forth in the . . . term sheets" attached to the letter.[3] Although Boudreau reaffirmed the defendants' intent to settle globally when Bailey made a settlement demand on February 11, he did not reject the offer, but instead promised to forward it to the defendants. The next communication from the defendants regarding the offer was Maatman's letter of acceptance on March 2. This created a binding agreement.

Because the Bamgbose term sheet is clear and unambiguous on the terms of settlement, the Court may not look to the Boudreau Declaration or any other extrinsic evidence to determine the intent of the parties. Shovel Transfer, 739 A.2d at 136. Moreover, that term sheet is not subject to an interpretation rendering settlement of this matter contingent on any event occurring in the California Action. Had the defendants intended the existence of a settlement in this matter to be conditioned upon the settlement in California, such a term could

---

[3] The defendants liken this case to Veritext/Pa Reporting Co. V. E-Reporting Stenographic Associates of Pennsylvania, Inc., No. 03-6533, 2006 WL 3524375 (E.D. Pa. Dec. 5, 2006). In that case, the court denied a motion to enforce a settlement agreement because ambiguity existed over the execution of a covenant not to sue. Veritext is distinguishable because the ambiguity over that covenant appeared on the face of the email exchanged by counsel for the parties, which also contained the terms of the agreed-to settlement. No such ambiguity exists in the communications between Bailey and Maatman that confirmed the agreement here, which themselves were separate from the term sheets containing the material terms of the settlement.

have been made part of the agreement.  See Mellon Bank, N.A. v. Aetna Bus. Credit, 619 F.2d 1001, 1015-16 (3d Cir. 1980) ("The rule in Pennsylvania is that a condition precedent to an obligation must be expressed by clear language.").[4]  The absence of any ambiguity as to conditional settlement in the parties' agreement entitles the plaintiffs to judgment as a matter of law under Tiernan.

In addition, Norris-Wilson did settle.  The dispute in California concerns the meaning of a term found in its settlement agreement, not whether a settlement was reached.  The parties there have asked the court to interpret the meaning of paragraph 6 of its term sheet.  According to the defendants' assertions in the California Action, "an agreement was reached" to settle that action, and there is "no dispute between the Parties that this [Norris-Wilson settlement] is an enforceable agreement, as the agreement reduced to writing the material terms of the agreement."  Norris-Wilson Def. Opp. 1 (S.D. Cal. No. 09-916 ECF No. 87).  See also Norris-Wilson Def. Notice of Intent to File

---

[4] To the extent that the defendants call the contingency of settlement a "material term" precluding enforcement, rather than a "condition precedent" as the plaintiffs have argued, settlement contingency is far more like the latter.  Black's Law Dictionary defines a material term as "a contractual provision dealing with a significant issue such as subject matter, price, payment, quantity, quality, duration, or the work to be done," while a condition precedent is "an act or event . . . that must exist or occur before a duty to perform something promised arises." Black's Law Dictionary 334, 1608 (9th ed. 2009).

Mot. to Enforce 2 (S.D. Cal. No. 09-916 ECF No. 84) ("Both Defendants and Plaintiffs assert that there is a settlement of this action, but a dispute regarding the interpretation of the settlement has surfaced.").

The defendants suggested at oral argument that Maatman lacked the authority to settle the matters independently of one another when he accepted Bailey's offer on March 2. Tr. Hr'g at 22:8-15. Notwithstanding the scope of authority granted to Maatman by the defendants, Maatman did have the authority to do <u>what he did</u>, which was to accept the term sheets as proposed by Bailey. Whether Maatman or his clients subjectively believed they were entering a conditional settlement, the legal effect of Maatman's action was to create a binding agreement in this matter.

This action and <u>Norris-Wilson</u> were settled on March 2, 2011 when Maatman sent his letter to Bailey accepting the terms of the settlement as set forth in the term sheets sent February 11, and consistent with the defendants' representations and the scope of authority Maatman had from his client. The enforcement of the settlement in this action is not dependent upon the resolution of the pending motion in <u>Norris-Wilson</u>, let alone the approval of a class settlement in that action. Even if the settlement of this action was contingent upon <u>Norris-Wilson</u> settling, that action did settle. As such, the Court will grant

the plaintiffs' motion.

        An appropriate order shall issue separately.